# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIARA MONIQUE GUERRA-MACIAS, | Case No.  1:19-cv-01372-SKO |
| Plaintiff, | |
| v. | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| ANDREW SAUL, Commissioner of Social Security, | (Doc. 1) |
| Defendant. | |

## I.  INTRODUCTION

On September 30, 2019, Plaintiff Ciara Monique Guerra-Macias ("Plaintiff") filed a complaint under U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.  BACKGROUND

Plaintiff protectively filed an application for SSI payment on December 14, 2015, alleging that she became disabled on November 1, 2013, due to emotional learning disability, anxiety,

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 8, 15.)

depression, and mood disorder.  (Administrative Record ("AR") 84, 98, 189, 193.)  Plaintiff was born on April 5, 1997 and was sixteen years old as of the alleged onset date.  (AR 189.)  She graduated high school and has no past work experience.  (AR 38, 53, 193.)

**A.    Relevant Medical Evidence[2]**

    **1.    State Agency Physicians**

On May 4, 2016, Eran Stanley, a State agency physician, reviewed the record and assessed Plaintiff's mental residual functional capacity ("RFC").[3]  (AR 76–81.)  Dr. Stanley opined that Plaintiff was: markedly limited in her ability to understand, remember, and carry out detailed instructions; and moderately limited in her ability to maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.  (AR 79–81.)  According to Dr. Stanley, Plaintiff was otherwise not significantly limited.  (AR 79–81.)  Dr. Stanley further opined that Plaintiff was able to interact with the public and work with co-workers and supervisors.  (AR 81.)  Upon reconsideration on December 19, 2016, another State agency physician, J. Collado, M.D., reviewed the record and affirmed Dr. Stanley's findings.  (AR 93–95.)

    **2.    Denys Arietta-Zorro, M.D.**

On December 21, 2015, Plaintiff presented to Dr. Arietta-Zorro for a mental status examination.  (AR 436.)  Dr. Arietta-Zorro noted that Plaintiff was cooperative during the examination, and he found that Plaintiff had organized thought processes, average intelligence, and normal cognition, orientation, and thought content.  (AR 436.)  During examinations on April 11, 2016, June 27, 2016, and August 29, 2016, Dr. Arietta-Zorro made similar objective findings, and treatment notes from the August 2016 examination indicated that Plaintiff had been "doing better in

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.' " *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

terms of behavior" and had not been "getting aggressive or having outbur[s]ts." (AR 462, 466, 470.) Treatment notes from February 27, 2017 were largely unchanged, and Dr. Arietta-Zorro also recorded that Plaintiff was not inappropriately laughing or talking to herself as often. (AR 568.) On June 20, 2018, Dr. Arietta-Zorro noted that Plaintiff's condition had improved in response to a change in medication, and she did not appear to talk to herself "much" anymore. (AR 544.)

On November 21, 2016, Dr. Arietta-Zorro submitted a "Mental Disorder Question[n]aire for Evaluation of Ability to Work" on behalf of Plaintiff. (AR 477–78.) Dr. Arietta-Zorro diagnosed Plaintiff with schizophrenia and indicated that Plaintiff had significant impairments to her orientation and memory. (AR 477.) Dr. Arietta-Zorro opined that Plaintiff's ability to perform activities of daily living had become impaired to the point that she needed assistance from others to achieve a socially acceptable standard of care; her social functioning had become deficient to the point that her ability to work with supervisors, co-workers, and the public had been impaired; and her mental illness impaired her ability to adapt to stresses common to the normal work environment. (AR 478.)

On January 31, 2018, Dr. Arietta-Zorro submitted another "Mental Disorder Question[n]aire for Evaluation of Ability to Work" on behalf of Plaintiff. (AR 479–80.) Dr. Arietta-Zorra again diagnosed Plaintiff with schizophrenia and indicated that Plaintiff had significant impairments to her memory and judgment. (AR 479.) Dr. Arietta-Zorro opined to the same limitations in his November 2016 opinion. (AR 480.)

**B.     Plaintiff's Mother's Statement**

On February 29, 2016, Plaintiff's mother, Juanita Guerra ("Guerra"), submitted a third-party statement on behalf of Plaintiff. (AR 200–07.) Guerra stated that Plaintiff's condition affected her ability to concentrate, follow instructions, and get along with others. (AR 205.)

**C.     Administrative Proceedings**

The Commissioner initially denied Plaintiff's applications for SSI benefits on May 6, 2016, and again on reconsideration on December 29, 2016. (AR 99, 166.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 111.) At the hearing on August 23, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged

disabling conditions. (AR 36–49.)

### 1. Plaintiff's Testimony

Plaintiff testified that she lives at home with her mother and does not drive. (AR 37.) She graduated from high school in June 2016 and had finished classes at City College. (AR 38, 40.) Plaintiff stated that she is able to shower and dress on her own, and she does household chores, such as washing dishes, sweeping, mopping, and washing and folding clothes. (AR 38.) Plaintiff also goes shopping with her mother and attends church. (AR 39, 43.) At the store, Plaintiff counts the change to make sure that she received the right amount. (AR 43.) According to Plaintiff, a typical day for her involves staying in her room and watching music videos and television. (AR 39.) Plaintiff wished she had friends, but she "[doesn't] really talk to anyone." (AR 39.)

Plaintiff testified that she used to have concentration problems, and she still has difficulty "organizing things." (AR 41, 42.) She is able to pay attention when watching television or a movie. (AR 42–43.) When Plaintiff was a student at City College, she received a tutor to assist with her coursework. (AR 41.) Plaintiff explained that when she is learning something, it is easier for her to learn if someone provides her with instructions while giving a demonstration of what to do. (AR 40.) Plaintiff also testified that she has problems controlling her anger; one of the ways she manages her anger is by staying in her room and waiting on the bed. (AR 43.)

### 2. Plaintiff's Mother's Testimony

Guerra testified that Plaintiff lived at home with her. (AR 50.) Plaintiff had participated in an independent living program a few years prior, and during that time, Plaintiff had "difficulties" with "abiding by the rules of staying in." (AR 50.) Plaintiff often did not have anything to eat, as she did not know how to feed herself. (AR 50–51.) Plaintiff would call Guerra to pick her up, and Guerra would take Plaintiff out to eat. (AR 51.)

According to Guerra, Plaintiff does only "basic, light," "mild chores," such as washing dishes, placing clothes into the hamper, taking clothes out of the dryer, and sweeping the floor. (AR 51.) Doing chores is "routine" for Plaintiff, but Guerra occasionally has to remind her. (AR 52.) As for cooking, Guerra stated that Plaintiff can microwave food with assistance. (AR 51.)

Guerra testified that when Plaintiff was attending City College, Plaintiff would often get

off at the wrong bus stop.  (AR 52.)  Guerra stated that Plaintiff has not tried to get a driver's license because Guerra did not think Plaintiff was ready to drive, due in part to Plaintiff's frequently getting lost.  (AR 53.)

Guerra testified that Plaintiff has "good days" and "bad days."  (AR 54.)  On a good day, Plaintiff is very quiet, keeps to herself, reads a lot, and spends a lot of time indoors.  (AR 54.)  On a bad day, Plaintiff is moody and withdrawn, and she will not answer when she is asked a question.  (AR 54.)  Plaintiff sometimes says things to herself and wants to be left alone.  (AR 54.)  Guerra noticed that, since taking Abilify, Plaintiff has been calmer and no longer has bad days, and the medication has "improved her demeanor a lot."  (AR 55, 57.)

Guerra stated that Plaintiff has no friends but is close with her sister, who lives down the street, and her nieces and nephews.  (AR 56, 57.)  Plaintiff enjoys going to church on the weekend.  (AR 57.)

### 3. Vocational Expert's Testimony

The ALJ asked the Vocational Expert ("VE") to consider a person of Plaintiff's age, education, and work experience.  (AR 58.)  The VE was also to assume this person had no exertional limitations but was restricted to simple, routine tasks and occasional public contact.  (AR 58.)  The VE testified that such a person could performs the jobs of cleaner II, Dictionary of Operational Titles ("DOT") code 919.687-014, weed thinner, DOT code 409.687-018, and vine pruner, DOT 403.687-022, all with a specific vocational preparation ("SVP")[4] of 1.  (AR 58–59.)  The VE testified that there were 6,100 cleaner II jobs, 16,600 weed thinner jobs, and 5,900 vine pruner jobs in the national economy.  (AR 59.)

**D.    The ALJ's Decision**

In a decision dated November 2, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 12–32.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 17–27.)  The ALJ determined that Plaintiff had not engaged in substantial

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id.*

5

gainful activity since December 14, 2015, the application date (step one). (AR 17.) At step two, the ALJ found Plaintiff's following impairments to be severe: learning disorder, mood disorder, and schizophrenia. (AR 17.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 18.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to simple, repetitive tasks at the [SVP] level of 1; and occasional public contact.

(AR 20.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 22.)

The ALJ determined that Plaintiff had no past relevant work (step four). (AR 26.) The ALJ ultimately concluded that, given her RFC, Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically housekeeping cleaner II, weed thinner, and vine pruner (step five). (AR 27.)

On December 4, 2018, Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 7.) On July 27, 2019, the Appeals Council denied review. (AR 1–3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.   LEGAL STANDARDS

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 1382c(a)(3)(B).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record

as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon

the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated Dr. Arrieta-Zorro's Opinions

#### 1. Legal Standard

The ALJ must consider and evaluate every medical opinion of record. See 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

"To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining

professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157, except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.[5] *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

### 2. Treating Physician Dr. Arrieta-Zorro

Plaintiff alleges—and the record reflects—that Dr. Arietta-Zorro was Plaintiff's treating physician. (*See* AR 461–72.) In a medical source statement submitted on Plaintiff's behalf on November 21, 2016, Dr. Arietta-Zorro assessed Plaintiff with schizophrenia and opined that Plaintiff's condition would impair her ability to work with supervisors, coworkers, and the public, and adapt to stress common to the normal work environment. (AR 477–78.)

In weighing Dr. Arietta-Zorro's November 2016 opinion, the ALJ stated:

> [T]his opinion is not consistent with the objective medical evidence in the record as a whole, because it is brief, vague, and provides inadequate justification for its conclusion with no reference to any of the unremarkable objective clinical findings in [Plaintiff's] mental health treatment records. Additionally, this opinion predates a majority of the relevant period, thereby preventing it from being an accurate opinion regarding [Plaintiff's] overall mental limitations. Thus, the opinion is given little weight.

(AR 25, internal citations omitted.)

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

Dr. Arietta-Zorro submitted a second medical source statement on Plaintiff's behalf on January 31, 2018, opining to the same limitations as his November 2016 opinion. (AR 479–80.) The ALJ also gave "little weight" to the January 2018 opinion, explaining:

> [T]he opinion is not consistent with or supported by the objective medical evidence in the record as a whole, because in addition to being brief, vague, and inadequately justified by the record like the opinion above, it also fails to provide a specific function-by-function analysis of [Plaintiff's] mental limitations, thereby diminishing its persuasiveness and overall weight.

(AR 25, internal citations omitted.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Arietta-Zorro's opinions are contradicted by the opinions of state agency physicians, Drs. Stanley and Collado, who opined that, subject to some restrictions, Plaintiff is able to interact with the public, work with co-workers and supervisors, and adapt to infrequent change in the work setting. (AR 80–81, 94–95.) Thus, the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Arietta-Zorro's opinions. *Trevizo*, 871 F.3d at 675.

An ALJ may discount an examining physician's opinion that is not supported by the medical record. *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Here, the ALJ properly rejected Dr. Arietta-Zorro's opinions because she found they were not supported by the objective medical evidence, particularly Plaintiff's "negative findings" at various mental status examinations in 2016 through 2018. (AR 24.) At an examination in April 2016, Dr. Arietta-Zorro found that Plaintiff had organized thought processes and normal cognition, orientation, and thought content. (AR 470.) In August 2016, Dr. Arietta-Zorro made similar objective findings during an examination and noted that Plaintiff had been "doing better in terms of behavior" and had not been "getting aggressive or having outbur[s]ts." (AR 462.) In February 2017, Dr. Arietta-Zorro noted that Plaintiff was not inappropriately laughing or talking to herself as

often. (AR 568.) Treatment notes from June 2018 were largely unchanged, and Dr. Arietta-Zorro noted that Plaintiff did not appear to talk to herself "much" anymore. (AR 544.)[6]

The ALJ also discounted Dr. Arietta-Zorro's opinions because they were "brief, vague, and provide[d] inadequate justifications for [their] conclusion[s]." (AR 25.) With regard to the January 2018 opinion, the ALJ further noted that it failed to provide "a specific, function-by-function analysis" of Plaintiff's mental limitations. (AR 25.) "A treating physician's opinion that is 'conclusory or brief' and lacks support of clinical findings may be rejected by an ALJ." *Gomez v. Berryhill*, No. 1:17–cv–01035–JLT, 2019 WL 852118, at *8 (E.D. Cal. Feb. 22, 2019) (citation omitted). Dr. Arietta-Zorro's opinions were mainly given in the form of a checklist, with little information as to what clinical findings supported any part of the opinion or why any particular section on the checklist was marked (*see* AR 477–80). *See Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996) ("The ALJ permissibly rejected . . . check-off reports that did not contain any explanation of the bases of their conclusion"); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003).[7]

In sum, the ALJ identified ample medical evidence in the record that undermines Dr. Arietta-Zorro's cursory opinions that Plaintiff's condition impairs her ability to work with supervisors, coworkers, and the public, and to adapt to stress common to the normal work environment. This is a specific, legitimate reason supported by substantial evidence for discounting the opinions of Dr. Arietta-Zorro. *See Magallanes*, 881 F.2d at 751; *see also Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Batson*, 359 F.3d at 1195. Although Plaintiff may disagree with the ALJ's interpretation of the medical evidence (*see* Doc. 23 at 20–23), it is not within the province of this

---

[6] The Court notes that two of the exhibits cited by the ALJ—"Exhibits 3F/7 and 8F/7"—do not support of her assertion that Plaintiff's "mental status examinations often revealed negative findings." (AR 24.) The examinations referenced in those two exhibits were for a routine physical examination (AR 457) and a complaint of "vaginal itching" (AR 487.) Nonetheless, the ALJ's reasoning is supported by substantial evidence given the records of other examinations also cited by the ALJ, discussed above.

[7] Another stated reason for the ALJ's discounting of Dr. Arietta-Zorro's November 2016 opinion was that the opinion "predate[d] a majority of the relevant period regarding [Plaintiff's] overall mental limitations." (AR 25.) The Court finds that this is not a specific and legitimate reason for assigning "little weight" to the opinion. Dr. Stanley's opinion, to which the ALJ assigned "partial weight," was given in May 2016, five months before Dr. Arietta-Zorro gave his initial opinion, and Dr. Collado's opinion, also assigned "partial weight," was given in December 2016, only a month after Dr. Arietta–Zorro's opinion. (AR 81, 95.) But since the ALJ provided other specific and legitimate reasons to reject the November 2016 opinion of Dr. Arietta-Zorro, any error in discounting the opinion based on its timing was harmless. *Valentine*, 574 F.3d at 694.

Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

**B.      The ALJ Properly Evaluated the Testimonial Evidence**

     **1.      Plaintiff's Testimony**

In evaluating the credibility of a claimant's testimony regarding her impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General

13

findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 22.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 22.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591. Here, the ALJ discounted Plaintiff's testimony because it conflicted with the objective medical evidence of record and because her impairments were controlled through treatment. (AR 23.)

### a. Objective Evidence of Record

"[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of . . . testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].'" *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15–cv–01308–SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680); *see, e.g.*, *Rollins*, 261 F.3d at 857 (a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence). Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in h[er] credibility analysis." *Burch*, 400 F.3d at 681.

The ALJ discounted Plaintiff's testimony regarding her "allegations of limited mental functioning" in part because Plaintiff's complaints were inconsistent with the medical evidence. (AR 23, 24.) The ALJ provided sufficient support for this conclusion, including an extensive discussion regarding the relevant medical evidence in the RFC analysis. (*See* AR 23–25.) As discussed above, Dr. Arietta-Zorro generally found Plaintiff to have organized thought processes

14

and normal cognition, orientation, and thought content in 2016, 2017, and 2018. (*See* AR 462, 470, 544, 568.)  In February 2017, Dr. Arietta-Zorro recorded that Plaintiff was not inappropriately laughing or talking to herself as often, and by June 2018, she was no longer talking to herself "much" anymore.  (AR 544, 568.)  Thus, the Court finds that the ALJ properly considered inconsistency with the objective evidence as one of several "clear and convincing" reasons to discount Plaintiff's credibility.  *See Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014).

### b.  **Impairments Controlled by Treatment**

In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when his or her symptoms can be controlled by medication.  *See* 20 C.F.R. § 416.929(c)(3)(iv); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").  Here, there is substantial evidence in the record that Plaintiff is adequately functional when medicated.  Dr. Arietta-Zorro's June 2018 treatment notes reflected that Plaintiff's condition had improved in response to a change in medication.  (AR 544.)  Guerra testified at the hearing in August 2018 that Plaintiff's medication had "improved [Plaintiff's] demeanor a lot," and Plaintiff no longer had "bad days," during which Plaintiff would be moody and withdrawn.  (AR 54, 55, 57.)  Plaintiff's improvement with medication is therefore a clear and convincing reason for discounting Plaintiff's subjective symptom testimony.[8]  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Hives v. Colvin*, No. 2:14–cv–2953–CKD, 2016 WL 336200, at *11 (E.D. Cal. Jan. 28, 2016) (finding that the ALJ's determination that the plaintiff's impairments were well-controlled with medication was a clear and convincing reason for

---

[8] The Court, however, disagrees with the ALJ's characterization of Plaintiff's treatment with medication as "conservative."  (*See* AR 22 (ALJ noting that Plaintiff's symptoms were "reasonably controlled with conservative treatment modalities").)  *See Baker v. Astrue*, No. ED CV 09-1078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment"); *see also A.B. v. Saul*, Case No. 8:18–cv–00997–SHK, 2019 WL 6139163, at *8 (C.D. Cal. July 23, 2019) (collecting cases stating that treatment with antipsychotic or antidepressant medication does not qualify as "conservative" treatment); *Rice v. Colvin*, No. 2:15–cv–1763 DB, 2017 WL 85815, at *5 (E.D. Cal. Jan. 10, 2017) ("It is entirely unclear to the court how treatment with such medications could be characterized as conservative").

discounting the plaintiff's subjective claim that her impairments caused her to be disabled).  *See also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that the claimant's impairments were controlled with medication).

### c. Harmless Error

In addition to bearing the burden of showing she is disabled, Plaintiff also has the burden of establishing that any error resulted in actual harm.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054–55 (9th Cir. 2012).  An "ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination."  *See Molina*, 674 F.3d at 1115 (quotation marks and citations omitted).  Even assuming the ALJ erred in discounting Plaintiff's testimony, the error was harmless because it is unclear what functional limitations Plaintiff believes her testimony established that were not accounted for in the ALJ's RFC assessment.  Plaintiff does not identify what portion of her testimony the ALJ should have credited or what additional limitations should have been included in her RFC, nor does she explain how the ALJ's RFC determination is inconsistent with her testimony.  Rather than explaining which of her statements were improperly discounted by the ALJ, Plaintiff instead points to Guerra's testimony—that Plaintiff is "unable to attend to basic life functions independently"—and asserts that Guerra's statements "should be considered [Plaintiff's] own symptomology of record." (Doc. 23 at 26.)  Plaintiff, however, cites no authority in support of this proposition.  That Plaintiff cannot articulate why the ALJ's RFC determination was inconsistent with her own testimony, and instead relies on her mother's testimony, further demonstrates that any error by the ALJ in assessing Plaintiff's testimony was harmless.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout*, 454 F.3d at 1055 (error harmless where it is non-prejudicial to claimant or irrelevant to the ALJ's ultimate disability conclusion).

### 2. Plaintiff's Mother's Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must consider, unless [s]he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Hernandez v. Saul*, No. 1:18–CV–00895–SKO, 2019 WL 2725256, at *12 (E.D. Cal. July 1, 2019) (citing *Lewis*, 236 F.3d at 511; *Stout*, 454 F.3d at 1053; 20 C.F.R. § 416.913(d)(4)).  An ALJ may properly reject lay witness testimony that is inconsistent with the

record. *See, e.g.*, *Lewis*, 236 F.3d at 511–12 (rejecting lay witness testimony conflicting with the plaintiff's testimony and the medical record); *Bayliss*, 427 F.3d at 1218 (rejecting lay witness testimony conflicting with the medical record).

In according Guerra's testimony "little weight," the ALJ stated:

> Since Ms. Guerra . . . [is] not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of [her] statements is questionable. Moreover, by virtue of the relationship as a mother . . ., Ms. Guerra . . . cannot be considered disinterested third parties, whose statements would tend to be colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [Plaintiff] alleged. Most importantly, significant weight cannot be given to Ms. Guerra's . . . statements because they, like [Plaintiff's], are not consistent with the preponderance of the opinions and observations by medical doctors in this case.

(AR 25–26, internal citation omitted.)

That Guerra has a close relationship with Plaintiff by virtue of being her mother is not a valid reason for the ALJ to discount Guerra's observations. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017); *see also Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (finding that "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value."). Nor is Guerra's lack of medical training an appropriate ground for rejecting her testimony. "Lay witnesses are not required to have medical training and their testimony need not be backed by any particular expertise." *Hernandez v. Saul*, No. 1:18–CV–01507–BAM, 2020 WL 1433044, at *6 (E.D. Cal. Mar. 24, 2020) (citing *Molina*, 674 F.3d at 1114).

The ALJ's finding that Guerra's statements were inconsistent with the medical evidence and medical opinions (AR 26), however, was a germane reason for rejecting the statements. *See Bayliss*, 427 F.3d at 1218 ("Inconsistency with medical evidence is one such reason [to reject lay testimony]."). In her written statement and hearing testimony, Guerra alleged that Plaintiff had difficulty following directions and concentrating on tasks. (AR 50, 52–53, 205.) This conflicted with the medical evidence. Mental examinations by Dr. Arietta-Zorro regularly found Plaintiff to have normal cognition and average intelligence. (AR 436, 466, 470.) Furthermore, Plaintiff was able to graduate from high school and complete classes at a city college. (AR 38.) Guerra also

reported that Plaintiff was withdrawn and had difficulty getting along with others (AR 54, 56, 205), but treatment notes indicated that Plaintiff was able to be cooperative at her mental status examinations and group therapy (AR 436, 470, 502). The State agency physicians also opined that Plaintiff could interact with the public and work with co-workers and supervisors. (AR 81, 95.) Therefore, the ALJ did not err in assigning "little weight" to Guerra's statements. (AR 26.)

**C.     The ALJ Identified a Significant Number of Jobs at Step Five**

Under the Act, a claimant will be deemed to be under a disability if the impairments preclude both previous work and "any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). Work exists in the national economy "when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country." *Id.*; *Gutierrez v. Commissioner*, 740 F.3d 519, 528 (9th Cir. 2014). "There is no bright-line test for how many jobs constitutes substantial evidence, but the Ninth Circuit has instructed that a 'comparison to other cases' can be instructive." *Shade v. Comm'r of Soc. Sec.*, No. 2:19–CV–1122–KJN, 2020 WL 2556753, at *3 (E.D. Cal. May 20, 2020) (citing *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012)). The Ninth Circuit has concluded in one case that 25,000 jobs in the national economy "represents a significant number of jobs in several regions of the country." *Gutierrez*, 740 F.3d at 529.

Relying on the VE's testimony, the ALJ found that Plaintiff was not disabled because she could perform in occupations with approximately 28,600 jobs in the national economy. (AR 27.) Specifically, the VE testified that Plaintiff could perform the requirements of occupations such as cleaner II, weed thinner, and vine pruner, with 6,100, 16,600, and 5,900 positions available in the national economy, respectively. (AR 59.) The Court finds that the ALJ did not err in concluding that 28,600 jobs nationally constituted a significant number of jobs. *See Gutierrez*, 740 F.3d at 529. Plaintiff's assertion that the ALJ was required to also consider whether the identified jobs existed in the region (*see* Doc. 23 at 31–32; Doc. 26 at 12–13) is unavailing. "'[W]ork which exists in the national economy' means work which exists in significant numbers *either* in the region where [the claimant] lives *or* in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B) (emphasis added). As the statutory requirement is written in the disjunctive, the ALJ was not required to consider the

regional availability of the identified jobs where it had already considered the national number of jobs. *See Gutierrez*, 740 F.3d at 528 ("even if credible evidence indicated a lack of significant number of jobs in a particular geographic area, a 'failure to disprove the existence of . . . jobs on a national scale would leave the ALJ's [step-five] finding intact[.]'") (quoting *Allen v. Bowen*, 816 F.2d 600 (11th Cir. 1987)).

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Ciara Monique Guerra-Macias.

IT IS SO ORDERED.

Dated:  **January 29, 2021**                       /s/ *Sheila K. Oberto*
                                                                  UNITED STATES MAGISTRATE JUDGE